IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICIA M.,[1]

    Plaintiff,

v.                                                                              Civ. No. 21-265 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff argues that the Commissioner committed error when she denied her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the ALJ committed several errors when she evaluated the persuasiveness of the opinion of consultative examiner Dr. Amy DeBernardi, Psy.D., among other opinions. The Court concurs that the ALJ made multiple errors in evaluating Dr. DeBernardi's opinion, and that the errors are not harmless. As a result, the Court GRANTS Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum (Doc. 22) and remands for further proceedings consistent with the opinion.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 10, 16. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## **APPLICABLE LAW**

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

> most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

3

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

Plaintiff argues error in the ALJ's assessment of the opinions of consulting examiner Amy DeBernardi, Psy.D., state agency consultant Barbara May-Valencia, Ph.D., and treating neurologist Kader Abdelerahman, M.D.[4] Because the Court agrees that the ALJ did not properly evaluate the opinion of Dr. DeBernardi, and that the errors are harmful, the Court does not reach Plaintiff's other arguments.

**I.       Legal standard**

Plaintiff filed her disability application after March 27, 2017, and thus the significantly revised rules for medical opinions apply to this case. AR 16. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. 20 C.F.R. § 416.920c(b). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* § 416.920c(b)(2). "Supportability" examines how closely connected an opinion is to the evidence and explanations presented in that opinion. *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021). "Consistency" compares a medical opinion to the evidence in the rest of the record. *Id.* An ALJ may, but is not required to, consider other factors such as relationship with the claimant; specialization; and other factors such as "a medical source's familiarity with the other evidence in a claim." *Id.* (citing 20 C.F.R. § 404.1520c(c); and *id*. § 416.920c(c)).

Nonetheless, the nature of substantial-evidence review has not changed in light of the new regulation. A decision "is not based on substantial evidence if it is overwhelmed by other

---

[4] In her opening brief, Plaintiff also argued constitutional error based on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). Plaintiff withdrew the argument in the reply brief. Doc. 27 at 1.

evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). As Judge Kirtan Khalsa explained, these "requirement[s] enable[] the courts to engage in meaningful judicial review of agency decisions and thus exist[] independently of agency regulations." *Thompson v. Saul*, No. 20cv672 KK, 2021 WL 2711378, at *8 (D.N.M. July 1, 2021).

In addition, there is no reason to think the regulations altered settled principles of administrative law pertaining to how ALJs review evidence. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ should not ignore relevant evidence or mischaracterize the evidence. *Id.* at 1010 ("Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

## II.    Dr. DeBernardi

### A.    Background

Dr. DeBernardi performed a consultative examination of Plaintiff on June 5, 2018. AR 802-05. On mental status exam, Dr. DeBernardi assessed that Plaintiff's general appearance,

attitude, and behavior were appropriate, with normal speech patterns and thought processes; that Plaintiff stated she had anxiety and her affect was congruent with this description; Plaintiff reported suicidal ideation without intent or plan; and Plaintiff was oriented to person, place, and time. AR 804. Plaintiff could not name any presidents; recalled one of three objects after five minutes; and provided six digits in the forward direction and three in the reverse. *Id.* On concentration, Plaintiff was unable to perform Serial 7s but correctly spelled "world" in the forward and backward direction. *Id.* Dr. DeBernardi noted no difficulties following conversation. *Id.* "[Plaintiff] had some understanding of her mental health symptoms, and appeared bothered by them." AR 805.

Dr. DeBernardi assessed diagnoses of "Major Depressive Disorder, Recurrent, Severe; Panic Disorder; Posttraumatic Stress Disorder, Chronic." *Id.* She stated the prognosis was: "Guarded. Claimant presents with longstanding mental health issues, which have been exacerbated by recent cancer diagnosis." *Id.* For Functional Assessment, Dr. DeBernardi wrote:

> The claimant appears to have the clear ability to reason and understand. Remote and recent memories are generally intact. Immediate memory is fair. Sustained concentration and persistence are fair to poor. She described relatively limited amounts of social support. Adaptive skills and ability to tolerate stress are also somewhat limited. Claimant is currently presenting with significant symptoms of depression and anxiety.
>
> These issues would likely impact her ability to be a dependable employee, to tolerate changes in the work environment, or to form appropriate relationships with co-workers, supervisors, or the general public.

*Id.*

The ALJ found Dr. DeBernardi's opinion "somewhat persuasive." AR 29. "This opinion, in that it suggests limitation in all the areas of the 'paragraph B' criteria, is somewhat consistent with the record . . . ." AR 30. But the ALJ gave two reasons for partially discounting it. First, the

ALJ stated "this opinion is quite vague as it does not set forth specific functional limitations in vocationally relevant terms." *Id.* Second, the ALJ stated:

> To the extent this opinion suggests limitation greater than set forth in the residual functional capacity (such as with sustaining concentration and persistence), the opinion is not consistent with the record as a whole, including the limited course of mental health treatment; the claimant's own acknowledgement of shopping in stores, attending church, following instructions well, and being able to pay attention "for a while" (B4E; B7E); and the medical records showing that the claimant was alert and oriented with normal behavior, judgment, thought content, cognition, and concentration (B7F/21; B8F/3; B14F/37; B22F/6; B23F/13).

*Id.*

Plaintiff argues that the ALJ's reasoning is "not adequate or accurate" with respect to the "vagueness" of Dr. DeBernardi's opinion. Doc. 22 at 11. She argues that "Dr. DeBernardi addressed mental limitations necessary for the performance of any job." *Id.* (citing Program Operation Manual System ("POMS") DI 25020.010 Mental Limitations). Plaintiff highlights that the Social Security Administration itself describes, as critical work-related abilities, remembering locations and work-like procedures, maintaining concentration and attention for extended periods, maintaining regular attendance, dealing with changes in a routine work setting, and getting along with coworkers, supervisors, and the general public. *Id.* at 11-12. These are all areas in which Dr. DeBernardi opined. AR 805.

The Commissioner contends that "Dr. DeBernardi's opinion arguably does not meet the definition of a medical opinion under agency regulations" because it does not set forth what Plaintiff can still do despite her impairments. Doc. 26 at 15 & n.6. The Commissioner apparently agrees with Plaintiff that Dr. DeBernardi opined in the relevant areas of work-related functional limitations, but argues that Dr. DeBernardi did not explain "*how* and *to what extent* would Plaintiff's symptoms impact these functional areas." *Id.* at 17. The Commissioner also argues "Dr. DeBernardi opined to greater limitations than those in the RFC only with respect to

Plaintiff's ability to sustain concentration and pace" and any error alleged by Plaintiff must be evaluated through that lens, i.e., whether there was substantial evidence for the ALJ to disregard only this limited portion of the opinion. *Id.*

> B.  Vagueness

The Court first finds that Dr. DeBernardi's opinion was a medical opinion the ALJ was required to evaluate. In deciding whether a doctor's statement is a "true medical opinion," published Tenth Circuit guidance indicates the relevant inquiry is whether the statement contains the doctor's judgment about the "nature and severity of [the claimant's] physical [or mental] limitations, or any information about what activities [the claimant] could still perform." *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (emphasis added). This remains consistent with the Social Security Administration's new regulations, which state:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities . . . to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . .

20 C.F.R. § 416.913(a)(2) & (a)(2)(i)(B).

The Court does not read this rule as requiring a medical opinion to be a statement about *everything* described in the regulation; rather, the regulation provides a list of things that make a statement a medical opinion. The Court finds it unreasonable to hold that Dr. DeBernardi's medical opinion is not a medical opinion simply because it doesn't provide a list of activities Plaintiff can do despite her impairments. Dr. DeBernardi's opinion discusses Plaintiff's symptoms, diagnosis, prognosis, and the nature and severity of the mental limitations as listed in subsection (a)(2)(i)(B).

Although the Court agrees with the Commissioner that Dr. DeBernardi did not phrase her opinion in terms typically found in examining consultants' opinions ("moderate" or "marked" limitations), the Court ultimately cannot agree with the ALJ that the opinion is so vague as to justify discarding it altogether on that basis. The ALJ, Plaintiff, the Commissioner, and this Court all understand that Dr. DeBernardi found limitations in concentration and pace greater than those present in the RFC. That is certainly specific enough for the ALJ to evaluate and explain why the ALJ assigned less restrictive limitations.

C.     Limited mental health treatment

The ALJ found Dr. DeBernardi's opinion inconsistent with "the limited course of mental health treatment." AR 29. There is no further explanation of this statement. It is not clear what is inconsistent between Dr. DeBernardi's opinion of Plaintiff's mental health limitations and Plaintiff's course of mental health treatment—Dr. DeBernardi did not condition her opinion on Plaintiff's treatment history. Rather, Dr. DeBernardi specifically noted that Plaintiff has never been hospitalized or gone to the emergency room for treatment, a factor the ALJ stresses repeatedly in support of the RFC. AR 803; AR 26-27. This is a consistency between Dr. DeBernardi's opinion and the record, not an inconsistency.

Plaintiff argues that before relying on a lack of treatment, the ALJ was required to consider what treatment was at issue and why Plaintiff did not seek or obtain it. Doc. 22 at 13 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). The Court agrees with this, especially in the realm of mental health because mental health impairments can be their own barrier to treatment. The Social Security Administration's own rules acknowledge as much. SSR 16-3p, 2017 WL 5180304, at *9 ("Due to various limitations (such as language or mental limitations), an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment."). Accordingly, the Administration states that "We

10

will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* at *8.[5] No indication exists that the ALJ in this case considered possible reasons Plaintiff did not seek treatment. Thus, it appears the ALJ discounted DeBernardi's opinion in violation of this rule.

        D.        Plaintiff's own statements

The ALJ found a contradiction between Dr. DeBernardi's limitations and "the claimant's own acknowledgement of shopping in stores, attending church, following instructions well, and being able to pay attention 'for a while.'" AR 30 (citing B4E; B7E). Plaintiff argues that "limited activities in themselves do not establish that one can engage in" work. Doc. 22 at 15 (quoting *Williams v. Bowen*, 844 F.2d 748, 759 (10th Cir. 1988)).

Plaintiff is correct insofar as "sporadic performance" or "intermittent" daily activities do "not establish that a person is capable of engaging in substantial gainful activity." *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987). In *Williams v. Bowen*, once the court had rejected other possible bases for affirming the ALJ, the Tenth Circuit determined that "limited activities" of daily living—such as putting washers in sinks, collecting rent, keeping records on two apartments, preparing TV dinners, watching TV, and visiting his girlfriend—did not by themselves support a conclusion that the claimant can work. 844 F.2d at 759.

However, neither *Frey* nor *Williams* is on point here because the ALJ is not using sporadic, limited activities as sole proof that Plaintiff can work full-time. Neither *Frey* nor

---

[5] While both *Thompson v. Sullivan* and SSR 16-3p are about subjective symptom evidence, the Court sees no reason why these authorities do not guide adjudicators in their consideration of a claimant's failure to seek treatment when that rationale is used in any place in the ALJ's opinion. There is no meaningful difference in using this logic to reject Dr. DeBernardi's opinion and to reject Plaintiff's description of her symptoms.

*Williams* prohibited an ALJ from citing some activities of daily living in order to establish an inconsistency between those activities and other evidence of record.

Here, the ALJ is citing these activities as an example of inconsistency between Dr. DeBernardi's assessment of Plaintiff's abilities and Plaintiff's stated activities elsewhere in the record. Dr. DeBernardi wrote that Plaintiff reported that a friend goes grocery shopping for her, as she feels unable to tolerate the crowds; that Plaintiff denied attending any type of regular activity; that Plaintiff can focus with reading or written tasks for about five to ten minutes and "a little longer when watching television, but tends to lose focus there as well" and concluded that Plaintiff's "[s]ustained concentration and persistence are fair to poor" and her mental health "would likely impact her ability to . . . form appropriate relationships with co-workers, supervisors, or the general public." AR 805. Elsewhere in the record, Plaintiff stated she shops in stores for groceries, AR 276,[6] is "good" at following written and spoken instructions and can pay attention "for a while," AR 278, and attends church two times a month when she can find a ride, AR 296.

In this respect, I find the ALJ accurately pointed to inconsistencies between Dr. DeBernardi's opinion and evidence elsewhere in the record.

---

[6] Plaintiff also argues the ALJ should have considered her hearing testimony that she does not go to the store. Doc. 22 at 15; AR 60 ("Going to the store, I get really bad anxiety, so I don't even attempt to go to the grocery store."). Given that Plaintiff said both that she goes to the store and that she does not go to the store, this appears to be cumulative of the ALJ's observation that there are contradictory statements in the record. Because Plaintiff's statement at the hearing was cumulative of a statement she made to Dr. DeBernardi, the ALJ was not required to discuss this hearing testimony. Further, the ALJ's conclusion that the record contains contradictory statements from Plaintiff about going to the store is not undermined by this hearing testimony.

E.     Medical records

Lastly, the ALJ stated that Dr. DeBernardi's opinion was inconsistent with "the medical records showing that the claimant was alert and oriented with normal behavior, judgment, thought content, cognition, and concentration." AR 29 (citing B7F/21; B8F/3; B14F/37; B22F/6; B23F/13). Plaintiff argues the ALJ "cherry-picked evidence" from the record and erred by citing to many physical medical records to show inconsistency with a psychological consultative examiner's findings. Doc. 22 at 16.

To the extent Plaintiff argues that an ALJ can never rely on physical medical records for psychological observations, even when such observations are present in such records, the Court rejects Plaintiff's argument. However, the Court agrees with Plaintiff that substantial evidence does not support the ALJ's finding of inconsistencies between the physical medical records and Dr. DeBernardi's opinion.

Dr. DeBernardi found Plaintiff was oriented, behaved appropriately, and had coherent thought processes. AR 804. Plaintiff had appropriate responses to questions designed to test her insight and judgment. AR 805. Dr. DeBernardi concluded that Plaintiff "had a clear ability to reason and understand." *Id.* But she was experiencing "significant" depression and anxiety. *Id.* As Plaintiff methodically demonstrates, Doc. 22 at 16, the medical records the ALJ cites largely say the same things.

- Exhibit B7F/21 (AR 639) records "normal mood and affect"; normal behavior; normal judgment and thought content. And as Plaintiff notes, Exhibit B7F shows that, on the same visit, Plaintiff was found to be "[p]ositive for depression" and "nervous/anxious." AR 638. In other words, this is perfectly consistent with Dr. DeBernardi's findings that Plaintiff's behavior, judgment, and thought content were normal and that Plaintiff's mood and affect were tense and demonstrated anxiety. AR 804.

- Exhibit B8F/3 (AR 721) records that Plaintiff was "alert" and had an appropriate mood. Memory and concentration were normal. *Id.* This shows, at most, that a provider found that Plaintiff's concentration was normal for purposes of the

appointment. It might, as such, be very minimal evidence in favor of the ALJ's finding. However, this record is otherwise consistent with Dr. DeBernardi's opinion. *Compare* AR 804 ("There was no evidence of any psychomotor agitation or retardation throughout the evaluation. . . . The claimant was cooperative and pleasant throughout the interview process. She answered all questions asked of her. . . . There were no difficulties following conversation noted.").

- Exhibit B14F/37 (AR 862) records "normal mood and affect"; normal behavior; normal judgment and thought content. Again, the same visit notes also record that Plaintiff is "nervous/anxious." AR 861. As noted above, this is consistent with Dr. DeBernardi's report.

- Exhibit B22F/6 (AR 1177) records that Plaintiff is oriented and has a normal finger-nose-finger test and normal gait. She had a normal mood and affect; normal speech and behavior; and normal cognition and memory. *Id.* Again, it documents that Plaintiff endorsed depression and anxiety. *Id.* Again, this is consistent with Dr. DeBernardi's observations.

- Exhibit B23F/13 (AR 1209) records that Plaintiff is alert and oriented, with normal mood, affect, and behavior. Again, this is not inconsistent because Dr. DeBernardi made the same observations.

In sum, the ALJ rejected an examining doctor's assessment that Plaintiff is experiencing significant anxiety and depression that would impact mental work-related abilities. The primary evidence the ALJ cites to reject this opinion (normal or appropriate mood/affect/orientation/behavior/thought content/cognition/memory) is evidence Dr. DeBernardi herself considered. In other words, Dr. DeBernardi—like the other providers whose notes the ALJ cites—considered Plaintiff's behavior and thought content to be appropriate. But Dr. DeBernardi nonetheless found that Plaintiff's depression and anxiety would likely impact her ability to do work. Therefore, these other findings in the record do not undermine Dr. DeBernardi's medical assessment because Dr. DeBernardi already took it into account. The ALJ does not indicate how, for example, appropriate behavior and thought content displayed in a medical exam undermines Dr. DeBernardi's conclusion that Plaintiff's anxiety and depression are significant and would likely impact her ability to work. At most, the ALJ cited one page that demonstrates Plaintiff's concentration was normal. AR 721. This is the only page the ALJ referenced in the record as a

whole that actually supports the ALJ's determination of inconsistency, and it is very minimal evidence of inconsistency.

The Commissioner argues that under the new standard of review, ALJs do not have to explain how they "weighed" medical evidence and their only duty is to evaluate the persuasiveness of an opinion. Doc. 26 at 18. The Court's only task, the Commissioner continues, is to determine whether such a decision is supported by substantial evidence. *Id.* While the Court does not necessarily disagree with these contentions, they are not apt when applied to the case at bar. Nothing in the new regulations permits an ALJ to find a medical opinion inconsistent with other record evidence by considering and citing record evidence that is, in reality, perfectly consistent with that opinion. The Commissioner does not argue otherwise, instead contending that "the fact that Plaintiff was alert and oriented with normal behavior, judgment, thought content, cognition, and concentration at various times" was "reasonable for the ALJ to have noted." *Id.* at 19. The Court does not find error in that the ALJ noted these aspects of the record. The Court finds error in that the ALJ claimed these aspects of the record were inconsistent with Dr. DeBernardi's opinion on unrelated issues (depression and anxiety) when they are not.

**III.    Reversible error**

In sum, the Court finds multiple errors in this case. First, the ALJ incorrectly concluded that Dr. DeBernardi's opinion is too vague to evaluate in terms of Plaintiff's work-related limitations. Second, the ALJ incorrectly used the lack of significant mental health treatment as a reason to reject Dr. DeBernardi's opinion. When Dr. DeBernardi gave her opinion, she was aware Plaintiff was not receiving significant mental health treatment; nonetheless, she still opined that Plaintiff had limitations. Not only did the ALJ fail to recognize Dr. DeBernardi was aware of, and so presumably incorporated into her opinion, Plaintiff's lack of treatment, the ALJ also failed to consider whether reasons other than the absence of mental health issues existed to

explain Plaintiff's lack of treatment. Finally, the ALJ incorrectly determined that certain medical evidence in the record was inconsistent with Dr. DeBernardi's opinion.

On the other side of the equation, the ALJ justifiably noted instances in which Plaintiff's own statements were inconsistent with, and so tended to undermine, Dr. DeBernardi's opinion about Plaintiff's limitations. The ALJ further justifiably cited one record from a provider that documented Plaintiff had normal concentration, a finding that contradicts Dr. DeBernardi's opposite conclusion. The relevant question before this Court is whether Plaintiff's own inconsistent statements and this one record showing normal concentration are, standing alone, sufficient to justify the ALJ's evaluation of Dr. DeBernardi's opinion. If the answer is "no," remand is required given that Dr. DeBernardi's opinion is indisputably inconsistent with the RFC in this case. If the answer is "yes," the errors the ALJ did commit might be rendered harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error occurs when no reasonable factfinder could reach an opposite conclusion when considering the material the ALJ properly considered).

The Court concludes that the answer to the above question is "no." Even when considering Plaintiff's contradictory statements and the one record showing normal concentration, a reasonable factfinder could nonetheless adopt Dr. DeBernardi's opinion in full. This is because the record contains ample evidence and statements that are consistent with Dr. DeBernardi's opinion. Doc. 22 at 14. It is for the factfinder to properly weigh this evidence in the first instance. Accordingly, the Court must reverse and remand.

The Court declines to reach Plaintiff's remaining allegations of error, as they may be affected by the analysis on remand.

## **CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum (Doc. 22).

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**